IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

——————————————————————————

ASHLEY S. P.,

                          Plaintiff,

          v.                                        Civil Action No.
                                                    5:20-CV-0794 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

——————————————————————————

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                       HOWARD D. OLINSKY, ESQ.
250 South Clinton St, Suite 210         ALEXANDER C. HOBAICA, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                  AMELIA STEWART, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


DECISION AND ORDER[1]

_____

[1]      This matter is before me based upon consent of the parties, pursuant to 28
U.S.C. § 636(c).

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, ineligible for the supplemental security income ("SSI") benefits for which she has applied.  For the reasons set forth below, I conclude that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence.

I.    UNDERLINE_BACKGROUND_PLACEHOLDER

Plaintiff was born in September of 1971, and is currently fifty years of age.  She was forty-five years old at the time of her application for benefits in May of 2017.  Plaintiff stands five feet and eight inches tall, and she weighed between approximately one hundred ninety and two hundred sixteen pounds during the relevant time period.  Plaintiff is separated, and lives in Phoenix, New York in an apartment with her adult son.  She has another teenage son who lives with his father.

In terms of education, plaintiff has graduated from high school, but has no additional vocational training.  Plaintiff last worked at a retail store and later at a gas station for a brief period.

Physically, plaintiff alleges that she suffers from ankylosing

spondylosis, fibromyalgia, high blood pressure, high cholesterol, high blood sugar, and bursitis in her right hip.  During the relevant time period, plaintiff received treatment consisting primarily of medication from providers at Arthritis Health Associates, Syracuse Orthopedic Specialists, and Phoenix Primary Care.

Mentally, plaintiff alleges that she suffers from bipolar disorder, depression, and anxiety.  Plaintiff has received mental health treatment consisting mainly of medication from her primary care provider at Phoenix Primary Care.

Plaintiff has reported that she can do limited housework, such as cooking, folding laundry, making her bed, and doing dishes, although she takes breaks while doing these chores.  She can drive, but does so only approximately once per week because it hurts to sit in the car.  She shops, but needs help to carry items.  Her activities include reading for short periods of time, playing games on her computer for short periods of time, watching movies, trying to paint, and doing crafts such as sewing when she has the money for supplies.  She reports having daily pain of varying intensity, but also flare-ups of pain approximately once per year during which she is unable to do anything.  Her pain medications do not provide consistent relief, so she uses heat and ice to manage her pain throughout

3

the day.  Plaintiff does not leave her house much because physical activity hurts and she does not like to be around crowds due to anxiety.  She was diagnosed with bipolar disorder and has a pattern of depression for a few days, interspersed with manic episodes a few times per week.  During her manic episodes, Plaintiff wants to do everything, but cannot physically accomplish what she wants to do, which makes her frustrated.

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

Plaintiff applied for SSI payments under Title XVI of the Social Security Act on May 24, 2017.  In support of that application, she alleged a disability onset date of January 1, 2013 – a date which was later amended at the hearing before the ALJ to May 24, 2017 – , and claimed to be disabled based on arthritis in her spine, bipolar disorder, clinical depression, high blood pressure, high cholesterol, high blood sugar, and bursitis of her right hip.

A hearing was conducted on March 12, 2019, by ALJ Bruce S. Fein, to address plaintiff's application.  ALJ Fein issued an unfavorable decision on April 25, 2019.  That opinion became a final determination of the agency on May 12, 2020, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

4

B.    The ALJ's Decision

In his decision, ALJ Fein applied the familiar, five-step sequential test for determining disability.  At step one, he found that plaintiff had not engaged in substantial gainful activity during the relevant period.  At step two, ALJ Fein found that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including fibromyalgia, ankylosing spondylitis, a depressive disorder not otherwise specified, and an anxiety disorder.  The ALJ found that plaintiff's additional medically determinable impairments of obesity, sleep apnea, hyperlipidemia, vitamin D deficiency, nicotine dependence, alcohol abuse, hypertension, irritable bowel syndrome, and left knee pain are not severe.

At step three, ALJ Fein examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 1.02, 1.04, 12.04, and 12.06.

ALJ Fein next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a full

range of light work,[2] with the following restrictions:

> [The claimant can] occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant can perform a low stress job defined as requiring only occasional decision-making, occasional changes in work setting and occasional judgment required.

At step four, ALJ Fein concluded that plaintiff did not have any past relevant work.  Proceeding to step five, the ALJ found that a finding of no disability was directed pursuant to Medical Vocational Guidelines ("Grids") Rule 202.20, reasoning that her additional nonexertional physical and mental limitations would have little or no effect on the occupational base of unskilled light work.  In making this finding, the ALJ relied in part on Social Security Ruling ("SSR") 85-15.  Based upon these findings, ALJ Fein concluded that plaintiff was not disabled at the relevant times.

---

[2]     By regulation, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

C.    This Action

Plaintiff commenced this action on July 15, 2020.[3]  In support of her

challenge to the ALJ's determination, plaintiff raises three arguments,

contending that (1) the ALJ erred in failing to properly weigh the opinion of

treating physician's assistant ("PA") Heather Machovec because the ALJ

failed to explain how her opinion was inconsistent with and unsupported by

the record and failed to consider plaintiff's fibromyalgia or the objective

evidence related to that impairment when finding PA Machovec's opinion

was not persuasive, (2) the ALJ erred in relying on the opinion of

consultative examiner Dr. Kalyani Ganesh because it is too vague to be

useful and did not account for plaintiff's fibromyalgia, and (3) the ALJ erred

in failing to elicit testimony from a vocational expert despite the existence of

significant nonexertional limitations, and in relying on SSR 85-15 to support

his step five finding because that ruling applies only in circumstances

where there are solely nonexertional limitations.  Dkt. No. 13.

Oral argument was conducted in this matter, by telephone, on

December 22, 2021, at which time decision was reserved.

---

[3]      This action is timely, and the Commissioner does not argue otherwise.  It has
been treated in accordance with the procedures set forth in General Order No. 18.
Under that General Order, the court treats the action procedurally as if cross-motions for
judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure.

III.    DISCUSSION

    A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

     B.    Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149

(N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.   Analysis

1.   ALJ Fein's Evaluation of the Opinion Evidence

 Plaintiff first argues that the ALJ erred in evaluating the opinion evidence contained within the record, focusing upon opinions from PA

11

Machovec and Dr. Ganesh.  Because plaintiff's application for benefits was filed in May of 2017, the new regulations regarding the weighing of medical source opinion evidence apply to her claim.  Under those new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but will rather consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  The regulations require that an ALJ must articulate in his or her determination how persuasive he or she finds each of the medical opinions and explain how the ALJ considered the supportability and consistency of those opinions.  20 C.F.R. § 416.920c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other

factors that are relevant to the persuasiveness of that source's opinion. 20 C.F.R. § 416.920c(c).

a. PA Machovec's Opinion

In her opinion, which is dated January 29, 2019, PA Machovec noted that plaintiff has fibromyalgia tender points, pain in her lumbosacral and cervical spine, arms and legs, stiffness, myalgias, mildly limited range of motion in her cervical spine and hips, and moderately limited range of motion in her lumbar spine. Administrative Transcript ("AT") at 538.[4] PA Machovec opined that plaintiff has no difficulty ambulating or balancing, but indicated that it is unknown how long plaintiff could perform tasks like sitting, standing, walking, lifting, carrying or postural maneuvers. AT 539-40. She further opined that plaintiff "may need to frequently change positions and perform stretching exercises," would need to shift positions at will between sitting, standing and walking, would need to take unscheduled breaks once per day for ten to fifteen minutes, would be off-task approximately ten percent of the workday due to her impairments, and would be absent from work approximately two days per month as a result of her impairments or treatment. AT 539-41.

---

[4]    The Administrative Transcript, which is found at Dkt. No. 12, will be cited herein as "AT __."

The ALJ found this opinion to be unpersuasive, concluding that it was internally inconsistent – particularly as to her ability to render an opinion on plaintiff's ability to walk – and was inconsistent with and unsupported by the objective medical evidence and plaintiff's own reported activity level.  AT 20.  The ALJ also noted that PA Machovic's opined limitation for the need to change positions at will is not supported by Dr. Ganesh's examination, and she did not identify any evidence that would support that limitation.  *Id.*  The ALJ lastly found that her opined limitations for off-task time and absences from work were "speculative at best."  *Id.*

Plaintiff argues that the ALJ's finding regarding PA Machovec's opinion was erroneous for four reasons: (a) PA Machovec had a long treatment relationship with plaintiff; (b) her opinion is supported by and consistent with her treatment notes, in which she noted plaintiff's subjective reports of pain and observed fibromyalgia tender points and limited range of motion in the cervical and lumbar spine, hips, and left knee on various occasions, as well as treatment notes from other providers who noted plaintiff's reports of pain, and observations of joint tenderness and other signs indicative of an inflammatory disease; (c) the ALJ failed to explain how the evidence is inconsistent with and does not support PA Machovec's opinion; and (d) the ALJ failed to consider plaintiff's fibromyalgia –

14

particularly the objective findings of tender points related to that diagnosis –

when finding PA Machovec's opinion was unsupported by the medical

evidence.  Dkt. No. 13, at 14-17.

As an initial matter, any failure by the ALJ to afford special weight to

PA Machovec's opinions based on her treatment relationship with plaintiff

was not error.  As was discussed previously, the new regulations do not

require the ALJ to afford deference to the opinion of a treating source and

the ALJ is not even required to explicitly discuss a source's treatment

relationship with the claimant.  20 C.F.R. § 416.920c(c).  The ALJ did,

however, recognize that PA Machovec was plaintiff's "rheumatology

provider" and therefore acknowledged that a treating relationship existed.

As to plaintiff's other arguments, I find no error in the ALJ's

assessment of PA Machovec's opinion.  As the ALJ stated, there are

portions of her opinion – particularly her opinions related to the ability to

ambulate – that are internally inconsistent.  Moreover, although plaintiff

cites a wealth of treatment notes showing primarily a limited range of

motion in her spine, hips, and left knee, as well as fibromyalgia tender

points, plaintiff fails to explain how those objective findings would support

the limitations that PA Machovec actually opined.  Specifically, there is no

obvious connection between such physical signs and the need to change

positions frequently, take an unscheduled break once per day, be off-task ten percent of the workday, and be absent from work approximately two days per month.  The only evidence that supports many of the opined limitations comes in the form of plaintiff's own subjective reports of pain, which the ALJ found to be not wholly persuasive – a finding which plaintiff has not challenged in her brief.  I also note that the treatment notes in the record do not generally contain even subjective reports by plaintiff that she would require the need to change positions, take breaks, be off task, or be absent from work.  Rather, they typically note that plaintiff reports generalized morning body stiffness, pain, and – less frequently – fatigue, without reports about how those symptoms affect her daily functioning. *See e.g.*, AT 415, 418, 422, 429, 439, 444, 450, 456, 463.

The reports and findings from two consultative examinations also support the ALJ's findings as to PA Machovec's opinion.  Dr. Corey Anne Grassel, who conducted a psychiatric evaluation of the plaintiff, observed that plaintiff had intact attention, concentration, and both recent and remote memory on examination, and that her intellectual functioning was estimated to be in the "high average" range.  Dr. Grassel noted that plaintiff reported she could perform self-care and household chores such as shopping, cooking, managing money, general cleaning, driving, and taking public

transportation, as well as activities such as listening to music, reading, and watching television.  AT 393.  Dr. Kalyani Ganesh, who performed an internal medical examination, noted that plaintiff reported pain brought on by activity, including walking and bending, but observed no abnormalities beyond an inability to squat and limitations in the range of motion in her lumbar spine.  AT 396-98.  She noted that plaintiff reported an ability to cook, clean, shop, shower, bathe, dress, watch television, listen to the radio, and read.  AT 397.  Again, there is no indication in these examination reports, whether through plaintiff's subjective reports or the objective observations, that clearly support the limitations in PA Machovec's opinion.

Lastly, the ALJ did not fail to consider plaintiff's diagnosis of fibromyalgia or the objective signs of that impairment when concluding that PA Machovec's opinion was inconsistent with and not supported by the record as a whole.  At step two of his analysis, the ALJ found fibromyalgia to be a severe impairment.  AT 16.  He discussed plaintiff's reports of daily pain with yearly flares, and noted that her fibromyalgia and ankylosing spondylitis were "waxing and waning conditions," in that she presented at times with symptoms, but at others with only "mild disease activity."  AT 18-19.  Plaintiff appears to argue that the ALJ did not adequately consider her fibromyalgia because he did not explicitly discuss notations related to the

17

presence of tender points on her body.  Dkt. No. 13, at 16.  However, plaintiff does not elaborate as to how the mere presence of tender points – a prerequisite for a diagnosis of fibromyalgia – supports that she was limited in the ways outlined in PA Machovec's opinion.  I note, moreover, that the ALJ is not required to discuss every piece of information in the record to show he considered it.  *See Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (noting that "[a]n ALJ is not required to discuss every piece of evidence submitted," and that "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered").  It is clear from the ALJ's decision that he considered all of the evidence in the record when assessing whether PA Machovec's opinion was consistent with that record.

Based on the above, I find no error in the ALJ's assessment of PA Machovec's opinion.

b.   Dr. Ganesh's Opinion

Plaintiff next argues that that the ALJ erred in relying on the opinion of Dr. Ganesh, because her finding of "moderate" limitations was too vague, and because Dr. Ganesh did not consider fibromyalgia as a diagnosis when rendering her opinion.  Dkt. No. 13, at 17-18.  These arguments must also be rejected for multiple reasons.

Addressing plaintiff's first argument, I note that quantifying an opinion in terms of "moderate" limitations does not necessarily render an opinion too vague to be useful for assessing a claimant's functional abilities. This court has recognized that, although terms such as "mild" or "moderate" might be vague under some circumstances, that is not the case where there is additional medical evidence, such as where the conclusion is supported by the source's examination or by other facts in the record. *See Jeffery A. v. Comm'r of Soc. Sec.*, 18-CV-1473, 2020 WL 1234867, at *8 (N.D.N.Y. Mar. 13, 2020) (Hummel, M.J.) (collecting cases); *see also Antoine T. v. Comm'r of Soc. Sec.*, 18-CV-0232, 2019 WL 2327937, at *10 (N.D.N.Y. May 31, 2019) (Hummel, M.J.) (finding use of "moderate" in consultative examiner's opinion was not so vague as to be without utility because the ALJ's analysis of both that opinion and all of the remaining evidence made any vagueness "more concrete within the context of the decision"). In this case, Dr. Ganesh conducted and recorded findings from a detailed examination, thereby permitting the ALJ to reasonably interpret what "moderate" meant in the context of that examination, which, as was already discussed, did not reveal significant observable limitations. I therefore do not find that this opinion was too vague for the ALJ to reasonably rely on it when assessing the RFC.

Turning to plaintiff's second contention, I conclude that the fact that Dr. Ganesh's examination and opinion predate plaintiff's diagnosis of fibromyalgia does not of necessity render her opinion stale or unreliable. Of note, Dr. Ganesh's examination occurred on July 6, 2017, and PA Machovec indicated shortly thereafter on November 30, 2017 that plaintiff might have fibromyalgia in addition to her inflammatory disease after observations of low back and hip tenderness.  AT 396, 453.  However, plaintiff had been exhibiting body pain well before November 2017; the fact that providers attributed that pain solely to her ankylosing spondylosis prior to that time does not suggest that plaintiff was not experiencing the effects of fibromyalgia during that period, but instead that her symptoms had not yet been diagnosed.  Dr. Ganesh conducted a physical examination of plaintiff and assessed her limitations based on that examination, and therefore observed any limitations that would have presented on examination, whether or not Dr. Ganesh – or even plaintiff – was aware that she had fibromyalgia.  Plaintiff does not indicate how the severity or limiting effect on her functioning changed following Dr. Ganesh's opinion – other than the later notations of tender points – in a way that would suggest that Dr. Ganesh's opinion was no longer a reliable estimate of plaintiff's observable functioning.  *Cf. Maxwell H. v. Comm'r of Soc. Sec.*, 19-CV-

0148, 2020 WL 1187610, at *6 (N.D.N.Y. Mar. 12, 2020) (Kahn, J.) (finding ALJ erred in relying on consultative examiner opinion where evidence from after that opinion clearly showed that plaintiff's mental health had deteriorated since the time that opinion was rendered).

The cases plaintiff relies upon for support are inapposite.  In *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464 (W.D.N.Y. 2018), that court found that the consultative examiner's opinion was stale where it was rendered nearly five years before the ALJ's decision and the plaintiff suffered a completely new injury to his left knee after that examination that resulted in multiple surgeries.  *Biro*, 335 F. Supp. 3d at 471.  Here, plaintiff was experiencing generalized body and joint pain well before she was ever formally diagnosed with fibromyalgia, and she was receiving essentially the same type of treatment both before and after her diagnosis – treatment with various biologic and anti-inflammatory medications.  *See e.g.*, AT 219 (noting that plaintiff was referred in December 2015 for treatment of arthralgias, myalgias, a positive ANA lab test, and a rash on her face and chest), 234 (continuing with management on Humira and meloxicam); 246 (noting tenderness to palpation of the bilateral SI joints and continuing with Humira and meloxicam, along with a short course of tramadol); 251 (ordering biologic treatment with meloxicam for diffuse arthralgia pain); 432

(trying Enbrel because Humira was not working).  She was subsequently prescribed gabapentin and/or Lyrica, which helped to address some of her existing generalized pain.  AT 417, 420-21, 423-24, 439, 447, 453. Because plaintiff was experiencing diffuse body pain and myalgias before Dr. Ganesh's examination, the fact that plaintiff was not formally assessed or diagnosed specifically with fibromyalgia until after that consultative examination does not render Dr. Ganesh's opinion stale; there is evidence from which one could reasonably believe that she was experiencing the effects of that impairment at the time Dr. Ganesh conducted her examination and rendered her opinion.

In *Selian v. Astrue*, 708 F.3d 409 (2d Cir. 2013), another case relied upon by the plaintiff, the Second Circuit Court of Appeals found error in the ALJ's acceptance of a consultative examiner's finding that the claimant did not have a medically determinable impairment of fibromyalgia despite the treating physician's diagnosis of that condition.  *Selian*, 708 F.3d at 419. However, the logic of that case does not apply to the circumstances here. The ALJ did not rely on Dr. Ganesh's list of diagnoses to conclude that plaintiff did not have fibromyalgia.  The ALJ explicitly found that fibromyalgia was both a medically determinable and a severe impairment. AT 16.  *Selian* provides no guidance concerning whether an ALJ can rely

on an opinion of a consultative examiner related to the claimant's functioning merely because that opinion predates a formal diagnosis of fibromyalgia.

Moreover, the ALJ did not wholesale adopt Dr. Ganesh's opinion when determining plaintiff's RFC.  Indeed, the ALJ included additional postural restrictions – occasional climbing, stooping, kneeling, crouching, and crawling – that were not present in Dr. Ganesh's opinion.  It is therefore clear that the ALJ considered the entire record, including evidence related to the period after plaintiff's formal diagnosis of fibromyalgia, when formulating the RFC, and did not merely adopt Dr. Ganesh's opinion wholesale.  Of note, plaintiff does not challenge that the postural limitations included in the RFC by the ALJ were supported by substantial evidence.  In that respect, I find no error in the ALJ's limitation of plaintiff to a range of light work consistent with Dr. Ganesh's opinion and the other evidence in the record.

Based on the foregoing, I conclude that plaintiff's arguments regarding the ALJ's weighing of the opinion evidence must be rejected.

2.    ALJ Fein's Step Five Finding

In her final argument, plaintiff maintains that the ALJ's step five finding is not supported by substantial evidence because the nonexertional

23

limitations included in the RFC – particularly the mental limitations –

preclude application of the Grids.  "If a claimant has nonexertional

limitations that 'significantly limit the range of work permitted by his

exertional limitations,' the ALJ is required to consult with a vocational

expert." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010).  "However, the

'mere existence of a nonexertional impairment does not automatically . . .

preclude reliance on the guidelines.'" *Zabala*, 595 F.3d at 410-11.  Rather,

the nonexertional impairment must "'significantly limit' a claimant's range of

work" such that "it causes an 'additional loss of work capacity beyond a

negligible one.'" *Id.* at 411.

Although plaintiff is technically correct that SSR 85-15, as a general

matter, does not apply in situations where a claimant has both exertional

and nonexertional impairments, *see Roma v. Astrue*, 468 F. App'x 16, 20

(2d Cir. 2012), I find that the ALJ's citation to and reliance on that SSR is

not legal error.

Specifically, the SSR that does apply to the use of the Grids as a

framework for evaluating a claimant experiencing a combination of

exertional and nonexertional impairments, SSR 83-14, directs the reader to

SSR 83-13 for additional discussion of nonexertional impairments.  SSR

83-13 was superseded by SSR 85-7, which in turn was superseded by

SSR 85-15.  *See* SSR 85-15.  SSR 83-14 therefore incorporates the discussions of nonexertional impairments from SSR 85-15 into its analysis, at least to the extent that SSR 85-15 is applicable to the situation presented.  It was therefore not error for the ALJ to rely on portions of SSR 85-15 that define nonexertional limitations and their effects, so long as he did so through the additional lens of plaintiff's exertional limitation to light work and SSR 83-14.  Notably, the ALJ did also cite SSR 83-14 as part of his overall discussion at step five, which indicates that he was aware of and considered that ruling when making his step five finding.

As to physical nonexertional limitations, SSR 83-14 indicates that light work does not generally require any climbing of ladders or scaffolds, does not generally require the ability to crouch, and requires only occasional stooping.  SSR 83-14; *see also* SSR 85-15 (noting that the sedentary and light occupational base would be virtually intact if an individual is limited to occasional stooping).  SSR 85-15 further provides that stooping and crouching are generally required frequently only for jobs that are classified as medium or at a higher exertional level, while crawling and kneeling are rarely required in any job, even arduous ones.  SSR 85-15.  Again, although SSR 85-15 applies primarily to situations in which solely nonexertional impairments are present, it expliclty provides useful

guidance for situations in which the claimant is limited to a certain

exertional level through its defining and discussing the various

nonexertional requirements that might be present at those exertional levels.

Here, the ALJ explicitly considered the effect these limitations would

have on the occupational base for light work.  AT 22.  I therefore find no

error in the ALJ's citation to SSR 85-15 when making this finding, and no

error in his finding regarding the physical nonexertional limitations in

general.  *See Walton v. Comm'r of Soc. Sec.*, 18-CV-6140, 2020 WL

3964255, at *8-9 (W.D.N.Y. July 13, 2020) (finding no error in relying on the

Grids where ALJ limited the plaintiff to light work with occasional stooping,

bending, kneeling, crouching, crawling, and climbing ramps and stairs, and

no climbing ladders, ropes, and scaffolds); *Katherine Marie S. v. Comm'r of

Soc. Sec.*, 18-CV-0233, 2019 WL 1427456, at *11 (N.D.N.Y. Mar. 29,

2019) (Dancks, M.J.) (finding no error in the ALJ's reliance on the Grids

where RFC limited plaintiff to light work with only occasional climbing,

balancing, stooping, kneeling, crouching, and crawling); *Cragin v. Comm'r

of Soc. Sec.*, 12-CV-0259, 2013 WL 3716537, at *7 (D. Vt. July 12, 2013)

(finding no error in ALJ's reliance on the Grids where RFC limited plaintiff to

light work  with only occasional climbing, balancing, stooping, kneeling,

crouching, and crawling).

As to the mental nonexertional limitations, SSR 85-15 indicates that, in considering whether the claimant retains the ability to perform unskilled work, the basic mental demands of unskilled work "include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  SSR 85-15.  This definition applies broadly to all unskilled work, whether or not any exertional limitations also exist.  However, rather than considering the full range of unskilled work at all exertional levels to be the applicable occupational base – as indicated by SSR 85-15 in a situation where solely nonexertional limitations are present – here the consideration before the ALJ was the range of unskilled work at the light – and sedentary – exertional levels.[5]

The ALJ found that plaintiff is capable of performing a low stress job that requires only occasional decision-making, occasional changes in work setting, and occasional judgment.  AT 18.  The ALJ further found at step five that "the evidence establishes that the claimant retains the ability to

---

[5]      "The functional capacity to perform light work includes the functional capacity to perform sedentary work."  *Decker v. Harris*, 647 F.2d 291, 295 (2d Cir. 1981); *see also* 20 C.F.R. §§ 404.1567(b), 416.967(b) (indicating that "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time").

perform [the] basic mental demands of work and, therefore, can perform unskilled work."  AT 22.  Plaintiff does not argue that the mental limitations in the RFC are unsupported by substantial evidence or how those specific limitations would erode the occupational base of unskilled light work to any significant extent, but rather merely argues – without any supporting citation to law – that those limitations "suggest[] more than negligible impairment that could severely limit the potential occupational base."  AT 19.

I find that the ALJ's explanation as to why the mental limitations in the RFC would not significantly erode the occupational base of light unskilled work to be conclusory and insufficiently articulated to allow this court to assess whether his finding is supported by substantial evidence.  In the relevant respects, this case is identical to *Michael F.D. v. Saul*, 19-CV-0600, 2020 WL 5742704 (N.D.N.Y. Sept. 25, 2020) (Sannes, J.).  In *Michael F.D.*, Judge Sannes concluded that ALJ Fein did not sufficiently reconcile the finding that the claimant remained able to perform the basic mental demands of unskilled work with the limitation to only occasional decision-making, changes in work setting, and judgment because the definition of unskilled work in SSR 85-15 requires the ability to perform the basic demands "on a sustained basis."

The same failure to reconcile exists in this case.  It is especially troubling that the ALJ failed to reconcile a finding that plaintiff could perform the mental demands of unskilled work, including the ability to perform tasks on a sustained basis, with his finding that plaintiff is capable of only occasionally making decisions.  It is possible that these limitations in fact would not preclude the performance of the basic mental demands of unskilled work on a sustained basis.  However, the ALJ's decision lacks sufficient explanation from which that conclusion can be appropriately drawn.  Such failure is particularly significant in this case, given that plaintiff has not only severe mental impairments that contribute to her ability to handle stress, but also well-documented fibromyalgia and chronic pain, both of which appear to impact her nonexertional functioning.

Based on the foregoing, I find that this matter should be remanded for further proceedings, either for the ALJ to provide a more adequate explanation for his reliance on the Grids at step five, or for the ALJ to elicit the testimony of a vocational expert.

## IV.   SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the plaintiff in support of his challenge to the Commissioner's determination, I find that the Commissioner's determination did not result from the

application of proper legal principles and is not supported by substantial evidence.  However, because I find that there is not persuasive evidence of disability on the administrative record before me, I decline to remand solely for calculation of benefits.  Accordingly, it is hereby

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 13) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 15) be DENIED, and this matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this this Order; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:      January 5, 2022
            Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge